IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| CHARLES WICKLINE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:06-0177 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the Court on Plaintiff's Motion for Remand (Doc. No. 12.), Defendant's Motion for Judgment on the Pleadings (Doc. No. 13.), and Plaintiff's Response. Both parties have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, Charles Wickline (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on February 5, 2004, (protective filing date), respectively, alleging disability as of October 31, 2003, due to hepatitis, knee impairments, and a mental impairment. (Tr. at 14, 48-50, 54, 59, 278-79.) The claim was denied initially and upon reconsideration. (Tr. at 24-28, 34-36, 280-83, 287-90.) On September 16, 2004, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 37.) The hearing was held on July 28, 2005, before the Honorable Brian P. Kilbane. (Tr. at 294-311.) By decision dated November 18, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-22.) The ALJ's decision became the final decision of the Commissioner

on January 25, 2006, when the Appeals Council denied Claimant's request for review. (Tr. at 6-9.) On March 8, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).[1]

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from

---

[1] The undersigned notes that Claimant's Complaint (Doc. No. 1.) states that Claimant is a resident of Covington, Virginia. Proper venue under 42 U.S.C. § 405(g) is "in the district court of the United States for the judicial district in which the [claimant] resides." 42 U.S.C. § 405(g). Pursuant to Rule 12(h)(1) of the Federal Rules of Civil Procedure, the defense of improper venue is waived where not raised. *See also*, *Hoffman v. Blaski*, 363 U.S. 335, 343, 80 S.Ct. 1084, 1089, 4 L.Ed.2d 1254 (1960)("finding that a "defendant, properly served with process by a court having subject matter jurisdiction, waives venue by failing seasonably to assert it, or even simply by making default."). Absent extraordinary circumstances, improper venue should not be raised *sua sponte* after the Defendant has effectively waived the issue. *See Stjernholm v. Peterson*, 83 F.3d 347, 349 (10th Cir.), *cert. denied*, 519 U.S. 930, 117 S.Ct. 301, 136 L.Ed.2d 219 (1996); *Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369, 371 (2d Cir. 1966)("Since the right to attack venue is personal to the parties and waivable at will, a district judge should not, in the absence of extraordinary circumstances, impose his choice of forum upon the parties by deciding on his own motion that there was a lack of proper venue."). Defendant has not raised the defense of improper venue, and therefore, the Court finds that the defense has been effectively waived. Accordingly, the Court considers the merits of Claimant's appeal.

a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional

> limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental

impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 16.) Under the second inquiry, the ALJ found that Claimant had diabetes mellitus, degenerative joint disease, obesity, and borderline intellectual functioning, which were severe impairments. (Tr. at 16.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 18.) The ALJ then found that Claimant had a residual functional capacity for a wide range of unskilled work at the sedentary level of exertion, with the following limitations:

> The claimant cannot climb ladders/ropes/scaffolds, should avoid hazards such as moving machinery and unprotected heights, and is limited in standing/walking to two hours in an eight hour workday. However, he can lift/carry twenty pounds occasionally and ten pounds frequently, is unlimited in sitting, and has no other significant postural, manipulative, visual, communicative, or environmental limitations. While he functions in the low average range intellectually and is moderately limited in performing tasks on a timely basis, dealing with stress, and interacting with others, he is capable of performing simple repetitive tasks in a low stress environment.

(Tr. at 19.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 20-21.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ nonetheless concluded, that Claimant could perform jobs such as a production inspector, hand assembler, and an electronic assembler, at the sedentary level of exertion. (Tr. at 21-22.) On this basis, benefits were denied. (Tr. at 22.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on January 29, 1961, and was 44 years old at the time of the administrative hearing. (Tr. at 21, 48.) Claimant had a ninth grade education and no vocational training. (Tr. at 21,

6

65, 298.) In the past, he worked as a general laborer and production worker. (Tr. at 21, 76-81, 306.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to sustain his burden of proof at step five of the sequential analysis by establishing that there was other work in the national economy that Claimant could perform. (Pl.'s Br. at 2-5.) Specifically, Claimant argues that the jobs identified by the VE, to wit, electronic assembler, product inspector, and hand assembler, are performed at the light exertional level according to the Dictionary of Occupational Titles (DOT), and therefore, conflict with the VE's testimony that the jobs are performed at the sedentary exertional level. (Id.) The Commissioner asserts that Claimant's argument is without merit and that substantial evidence supports the ALJ's decision. (Def.'s Br. at 5-10.)

Step Five Analysis.

1. Hand Assembler.

The Court first addresses Claimant's argument with regard to the hand assembler position. Claimant asserts that the ALJ erred in relying on the VE's testimony that Claimant could perform the job of a hand assembler at the sedentary exertional level because the DOT describes the hand assembler jobs as being performed at the light exertional level. (Pl.'s Br. at 4.) Specifically, Claimant cites DOT sections 726.684-070, printed circuit board assembler, and 721.684-022, electric motor assembler. (Id.) The Commissioner, however, asserts that there are at least seven hand assembler jobs identified in the DOT as being unskilled jobs performed at the sedentary level of exertion. (Def.'s Br.

at 7-8.) These jobs include: § 734.687-010, assembler; § 713.687-018, final assembler; § 732.684-062, fishing reel assembler; § 739.687-066, compact assembler; § 734.687-074, slide-fastener-chain assembler; § 739.684-094, lamp shade assembler; and § 739.687-086, eye-drop assembler. (Id.) Although these jobs are performed at the sedentary exertional level, Claimant argues that other limitations prevent him from performing the specific jobs identified by the Commissioner. (Pl.'s Reply at 2-3.) Specifically, Claimant argues that all seven jobs require Claimant to interact with people, a skill which the ALJ precluded in his hypothetical posed to the VE. (Id.) Furthermore, Claimant argues that three of the seven jobs require "attaining precise set limits, TOLERANCES, and standards," which skill runs counter to the ALJ's finding that he function in a low stress environment. (Id.) Finally, Claimant argues that all seven jobs require production quotas which would increase work stress. (Id. at 3, n. 1.)

"RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2004). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2)(2004).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

After reviewing and considering the evidence of record, the ALJ concluded that Claimant retained the RFC "to perform a wide range of unskilled work at the sedentary level of exertion." (Tr. at 19.) Claimant does not challenge the ALJ's RFC assessment. Rather, Claimant takes issue with the ALJ's reliance on the VE's testimony which he alleges is inconsistent with the DOT. Neither the ALJ nor the VE identified specific DOT section numbers. The Commissioner correctly identifies seven hand assembler jobs which match Claimant's RFC as assessed by the ALJ. Claimant correctly notes that these seven jobs define worker functions to include taking instructions and helping. Claimant argues, however, that these functions are inconsistent with the ALJ's finding that Claimant "is moderately limited in . . . interacting with others[.]" The DOT reflects that the amount of interaction with workers, supervisors, and the public is level eight, which requires;

> Taking Instructions-Helping: Attending to the work assignment instructions or orders of supervisors. (No immediate response required unless clarification of instructions or orders is needed.) Helping applies to "non-learning" helpers.

U.S. Department of Labor, Dictionary of Occupational Titles (DOT) (4th ed. 1991), Appendix B. The DOT further reflects that the amount of interaction necessary for the seven identified hand assembler jobs is "Not Significant." This amount of interaction is not inconsistent with the ALJ's hypothetical, which required the VE to consider an individual who could accept instructions from supervisors and who had moderate problems in interaction with co-workers and the public. (Tr. at 307.) The ALJ's limitations were consistent with the mild to moderate limitations identified in the medical evidence. (Tr. at 189, 255-56.) Accordingly, the Court finds that the interaction required by DOT sections as

9

stated by the Commissioner is consistent with the jobs identified by the VE and the RFC assessed by the ALJ. See e.g., Flaherty v. Halter, 182 F.Supp.2d 824, 851 (D. Minn. 2001) (finding that the DOT's defined interaction as "not significant" did not contradict the ALJ's limitations that the claimant perform only work which involved simple, routine, repetitive, concrete, and tangible tasks).

Claimant also argues that three of the seven jobs identified by the Commissioner, DOT §§ 732.684-062, 734.687-074, and 739.684-094, require Claimant to attain "precise set limits, TOLERANCES, and standards," which skills run counter to the ALJ's finding that he function in a low stress environment. (Pl.'s Reply at 3.) He further argues that all seven of the jobs require production quotas which would increase work stress. (Id. at 3, n. 1.) The ALJ asked the VE to consider an individual with, *inter alia*, moderate problems with coping with stress. (Tr. at 306-07.) The VE characterized the ALJ's hypothetical as requiring simple, repetitive work with no close detail to attention. (Tr. at 307.) The VE identified the jobs of production inspector, hand assembly worker, and electronics assembler, which he stated were consistent with the descriptions of the DOT. (Tr. at 307-08.) The ALJ noted in his decision that Dr. Nichols opined in his consultative psychological examination of Claimant that Claimant was moderately limited in his ability to cope with stress which would preclude him from doing detailed and complex tasks. (Tr. at 19, 189.) Dr. Nichols and the ALJ concluded that Claimant was capable of performing simple and repetitive tasks. (Id.) The hand assembler job identified by the VE involves only simple, repetitive work. Claimant's limitations regarding stress were only moderate, meaning that jobs entailing some stress were not precluded by the limitation. There is no evidence of record indicating that Claimant is precluded from work which requires him to attain limits and quotas. Accordingly, in the absence of such evidence, the Court finds that the VE and the ALJ adequately considered that Claimant experienced moderate problems in coping with stress and identified the job of hand assembler as suitable work. The record in this case

contains no support for the severity of Claimant's allegation that he avoid any jobs requiring limits and quotas which would preclude him from performing the hand assembler job. Accordingly, the ALJ's decision at step five is supported by substantial evidence of record. Without addressing the substance of Claimant's remaining arguments, the Court finds that any error the ALJ may have committed in identifying work as that of an electronic assembler and product inspector is harmless because the Commissioner met his burden at step five of the sequential analysis by demonstrating that Claimant was able to perform the hand assembler job.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Remand (Doc. No. 12.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. No. 13.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: February 26, 2007.

R. Clarke VanDervort
United States Magistrate Judge